UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

HOLLY A. STANTON,

                     Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   Defendant.

───────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

07-CV-803
(LEK/VEB)

## I. INTRODUCTION

In April of 2005, Plaintiff Holly A. Stanton filed an application for disability and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since October 5, 2004, primarily due to a herniated disc, chronic cervical strain, cervical bulging disc, and rotator cuff tendinitis related to a motor vehicle accident. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Olinsky & Shurtliff, LLP, Howard Olinsky, Esq., of counsel, commenced this action on August 6, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 31, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for benefits on April 28, 2005, alleging that she had been unable to work since October 5, 2004.  (T[1] at 42-47).  The application was denied on August 9, 2005. (T at 11-17, 36-40). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and on December 12, 2006, Plaintiff appeared with counsel at a hearing in Syracuse, New York before ALJ J. Michael Brounoff.  (T at 232-78).

On December 29, 2006, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 11-17).  That decision became the Commissioner's final decision on July 12, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

Plaintiff timely commenced this action on August 6, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on December 20, 2007. (Docket No. 8).  The Commissioner filed a Brief in opposition on February 29, 2008. (Docket No. 10).

In accordance with General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 5).

parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of

the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis:**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social

Security Act ("the Act") at least through December 31, 2009.  (T at 13).  The ALJ concluded that Plaintiff had engaged in substantial gainful activity during 2006. (T at 13).

The ALJ found that Plaintiff has the following "severe" impairments: bulging discs of the cervical spine and rotator cuff tendinitis of the right shoulder.  (T at 14). However, the ALJ concluded that Plaintiff's impairments did not meet or equal the level of severity of any disabling condition set forth in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings")  of the applicable Social Security Act Regulations (the "Regulations").  (T at 15).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to lift/carry five (5) pounds frequently with her right upper extremity; lift/carry without restriction with her left upper extremity; stand/walk for a total of two (2) hours in any eight (8) hour workday, sit without restriction, reach overhead on an occasional basis, and handle/finger without restriction. (T at 15).

The ALJ concluded that Plaintiff could perform her past relevant work as a circuit board assembler and thus was not under a "disability," as defined in the Act.  (T at 16-17).

As noted above, the ALJ's decision became the Commissioner's final decision on July 12, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

## 2.    Review of Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers five (5) principal arguments in support of her position.  First, she contends that the ALJ failed to give sufficient weight to the opinion of her treating physician, Dr. Lasda. Second, Plaintiff asserts that the ALJ did not apply the appropriate legal standards to assess her subjective testimony regarding pain and disabling symptoms. Third, Plaintiff

6

argues that the ALJ's residual functional capacity finding is not supported by substantial evidence.  Fourth, Plaintiff claims that the ALJ erred by finding her capable of performing her past relevant work.  Fifth and finally, Plaintiff argues that the ALJ should have considered Plaintiff's 2006 work activity as "trial work activity" under the Regulations.  This Court will address each argument in turn.

### a.    Consideration of Treating Physicians' Opinions

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

F.3d 496, 503 (2d Cir. 1998) .

In this case, Plaintiff contends that the opinions of her treating physician, Dr. Norman Lasda, were entitled to controlling weight.  In support of this argument, Plaintiff asserts that the ALJ "cited no medical opinion evidence of [her] function by function limitations that was inconsistent with Dr. Lasda's opinions." (Docket No. 8 at 15).

Plaintiff began treating with Dr. Lasda, an orthopedist, on November 29, 2004, almost two months after the alleged onset of disability following a course of physical therapy.  (T at 170).  After her initial examination, Dr. Lasda noted that Plaintiff's "[g]eneral appearance [was] satisfactory."  (T at 170).  He found that she was unable to return to work at that time and should continue physical therapy.  (T at 170).

Dr. Lasda continued to treat Plaintiff thereafter, including monthly visits between November 2004 and May 2005, and a visit in August 2005.  (T at 170-183, 212).  Plaintiff did not return to Dr. Lasda until April 2006 and was seen again in October of 2006.  (T at 204-211).  During the visits, Plaintiff complained of pain, occasional numbness and difficulty sleeping.  (T at 170, 174,178,180, 183, 204, 208, 210, 212).  Dr. Lasda continued Plaintiff on physical therapy for a period of time and continued her with Motrin ibuprofen and Darvocet for pain medication.  (T at 174).

The December 2004 office notes of another of Plaintiff's doctors, Suryakant Patel, M.D., indicate that physical therapy was helping, Plaintiff was "feeling pretty good," she had discontinued the muscle relaxant, and "hardly use[d] her Darvocet." (T at 104, 105).  According to Dr. Lasda's notes from a visit on February 21, 2005, Plaintiff's lower back was better, with pain approximately every other day.  (T at 180).  Plaintiff stated that she was better able to do her "day-to-day" activities.  (T at 180).  In April of 2005, Dr. Lasda noted

that Plaintiff was only occasionally wakened from sleep due to pain and opined that she had a "temporary disability of a mild degree." (T at 181). Unlike previous office notes, the February and April 2005 office notes made no recommendation that Plaintiff remain out of work. (T at 180, 181). Later, in April 2006, Dr. Lasda indicated that "no further intervention is needed at this time." (T at 210). Dr. Lasda also noted that Plaintiff was engaged in part-time work from home. (T at 193). In October of 2006, Dr. Lasda further found that Plaintiff did not require "injection or surgery" and will only be seen on an "as-needed" basis. (T at 204).

On January 11, 2005, a MRI of Plaintiff's lumbar spine noted "[n]o evidence for fracture or for disc herniation" and the final impression of Plaintiff's MRI was that it was a "normal MRI of the lumbar spine." (T at 176). A subsequent MRI of Plaintiff's right shoulder, conducted on October 23, 2006, noted "either focal tendinitis or a small incomplete tear of the supraspinatus tendon" with everything else appearing "normal." (T at 196). Dr. Lasda's subsequent office exam of Plaintiff on October 30, 2006 indicated that the possible tear did not "require injection or surgery." (T at 204).

Dr. Lasda completed a Medical Source Statement of Plaintiff's ability to do work form on December 5, 2006, in which he opined that Plaintiff could rarely lift and carry less than ten (10) pounds, could sit for about two (2) hours or stand for about four (4) hours in an eight (8) hour workday, could occasionally twist, stoop, crouch, climb ladders and climb stairs. (T at 215-217). Dr. Lasda stated that Plaintiff's condition existed and was persistent since the alleged date of onset. (T at 218).

The ALJ afforded "little weight" to Dr. Lasda's opinion that Plaintiff is disabled, stating that Dr. Lasda's opinion as to Plaintiff's ability to work relates "solely" to Plaintiff's "past

work as a postal carrier, rather than all possible types of work." (T at 15).  Regarding Dr. Lasda's assessment of Plaintiff's functional limitations, the ALJ gave Dr. Lasda's opinion "limited weight," because they were not "well supported by reference to objective medical findings" and are inconsistent with Plaintiff's performance of substantial gainful activity in 2006.  (T at 16, 193, 210).

The Court finds that the ALJ's decision in this regard was supported by substantial evidence.  First, Dr. Lasda's finding of Plaintiff's inability to perform substantial gainful activity is contradicted by Plaintiff's actual performance of substantial gainful activity in 2006.  (T at 193, 210).  Further, Dr. Lasda's assessment that Plaintiff's condition existed and persisted since October 5, 2004 was undermined by contradictions in the doctor's own records.  For example, on February 21, 2005, Dr. Lasda noted in his assessment that she is "improving" and there was no longer a need for therapy.  (T at 180).  On April 1, 2005, Dr. Lasda noted that Plaintiff stated that she does everything and is "fine in moderation." (T at 181). Later, on April 25, 2006, Dr. Lasda noted that "no further intervention is needed at this time." (T at 210).

These records contradict Dr. Lasda's December 2006 Medical Source Statement form stating that Plaintiff's condition had persisted since October 2004. (T at 218).  Dr. Lasda also noted in April of 2005 that Plaintiff only had a "temporary disability of a mild degree." ( T at 181).  This indicates that Dr. Lasda believed Plaintiff was not totally disabled and that the disability was not permanent.  Indeed, Plaintiff's MRIs revealed that her lumbar spine was  "normal" with a possible partial tear in her shoulder that Dr. Lasda determined did not require surgery or injection.  (T at 176, 196, 204).  Accordingly, there is more than substantial evidence to support the ALJ's finding in this regard.

10

Moreover, the issue of "disability" under the Act is not a medical issue to be decided by a treating source, but an administrative finding reserved to the Commissioner. See 20 C.F .R. 404.1527(e); SSR 96-5p. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Id. It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physician and instead substituted his lay opinion for competent medical evidence.  Rather, the Court finds that the ALJ carefully reviewed and acknowledged the medical evidence and opinions of Plaintiff's treating physicians, and rejected those opinions deemed to be conclusory or inconsistent with the medical evidence provided in Plaintiff's record.

Accordingly, the Court finds that the ALJ's assignment of weight to the opinions of Plaintiff's treating physician, Dr. Lasda, was in accord with applicable law and supported by substantial evidence.

### b.    Evaluation of Plaintiff's Subjective Allegations of Disabling Pain

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of

11

disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted). To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for

relief of ... pain or other symptoms;

6.     Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.     Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

Here, the ALJ concluded that Plaintiff had medically determinable impairments capable of causing pain, but noted that her performance of substantial gainful activity in 2006 was inconsistent with her claim of disabling pain. (T at 16).  Without supporting explanation, Plaintiff offers the conclusory assertion that the ALJ failed to apply the correct legal standard when evaluating her credibility.

However, the ALJ made the threshold determination that Plaintiff had medically determinable impairments capable of causing pain, listed the appropriate factors to be considered in the context of a credibility evaluation, and applied the applicable standard to the facts.  The Court finds no error in the ALJ's articulation or application of the standard. In addition to the performance of substantial gainful activity in 2006, Plaintiff's testimony regarding her ability to drive, perform activities of daily living, and care for her young son (T at 253, 259-64) was also inconsistent with her claims of disabling pain.  The medical records also indicated that Plaintiff's pain was treated conservatively (T at 194, 197, 204) and Plaintiff testified that she had not received any treatment for her right shoulder pain. (T at 256).

13

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling. The ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision in this regard should therefore be upheld.

### c.    Residual Functional Capacity

Residual functional capacity or "RFC" refers to the activities and abilities the claimant remains able to perform despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); see

14

Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999).  To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e); see Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir.1984). The ALJ must specify the functions a claimant is capable of performing. Martone, 70 F.Supp.2d at 150.

A RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. Id. (citing LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990)).

In this case, the ALJ concluded that Plaintiff had the residual functional capacity to lift/carry five (5) pounds frequently with her right upper extremity; lift/carry without restriction with her left upper extremity; stand/walk for a total of two (2) hours in any eight (8) hour workday, sit without restriction, reach overhead on an occasional basis, and handle/finger without restriction. (T at 15).

Plaintiff argues that this finding was unsupported by the evidence and contrary to the assessment of Dr. Lasda, her treating physician.  However, as noted above, the ALJ's decision to afford little weight to Dr. Lasda's assessment was supported by substantial evidence.  Moreover, as discussed below, the fact that Plaintiff performed substantial gainful activity in 2006 provides further support for the ALJ's residual functional capacity assessment, as well as his decision not to afford controlling weight to Dr. Lasda's opinion. For the foregoing reasons, the Court finds no reversible error with regard to the ALJ's RFC determination.

**d.    Finding that Plaintiff Could Return to her Past Relevant Work**

15

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In this case, the ALJ noted that Plaintiff had an extensive work history as a circuit board assembler and that (at that time of the hearing) she was assembling circuit boards for the same company from her home on a self-employed, contract basis.  The past work as a circuit board assembler required sitting for most of the work day, with little or no lifting or carrying.  (T at 60, 250-51).  Although Plaintiff testified that she was able to work from home only because she could work at her own pace (T at 243), the ALJ examined Plaintiff's actual output and noted that it compared favorably to the output quota established for

16

employees working at the factory.[4] (T at 17).  Accordingly, the ALJ concluded that Plaintiff retained the residual functional capacity to perform her past relevant work as a circuit board assembler as the job is actually performed.

Plaintiff correctly notes that the ALJ did not reference the *Dictionary of Occupational Titles* ("DOT"), which is customarily referenced at this stage of the analysis.[5]  However, Plaintiff does not cite any authority from the DOT tending to call into question the ALJ's determination regarding the exertional requirements of the past relevant work.  The ALJ reasonably relied upon Plaintiff's description of the requirements and the evidence concerning her work output.  Further, Plaintiff's primary challenge is based upon Dr. Lasda's determination that she was limited to sitting two (2) hours total in an eight (8) hour day.  For the reasons discussed above, the ALJ's decision not to afford significant weight to that assessment was supported by substantial evidence.  As such, the Court finds no reversible error in the ALJ's finding that Plaintiff could return to her past relevant work.

### e.    Finding  that 2006 Work Activity Did Not Qualify as a Trial Work Period

The Regulations provides that a "trial work period" is:

[A] period during which you may test your ability to work and still be considered disabled.... During this period, you may perform services ... in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

---

[4]Plaintiff averaged 200 boards per week, with a maximum of 300 boards a week.  The company quota was 110 boards per week.  (T at 17).

[5]The DOT, a publication of the U.S. Department of Labor, is a standardized compendium of occupations, with a summary of the customary activities performed.

20 C.F.R. § 404.1592(a); see Reed v. Astrue, No. 03-CV-6235, 2008 WL 1902431, at *14 (W.D.N.Y. April 28, 2008).

Plaintiff contends that the ALJ erred by determining that her 2006 work activity did not qualify as a trial work period.  However, a claimant must be disabled in the first instance to qualify for a trial work period.  See 20 C.F.R. 404.1592(d)(1) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits...."); Miller v. Astrue, 538 F. Supp.2d 641, 653 (S.D.N.Y. 2008).  As discussed above, the ALJ found that Plaintiff was not disabled both before and after she resumed work in January 2006.  Substantial evidence supports this finding and this Court accordingly finds no error in the fact that the ALJ did not consider the 2006 work activity as a trial work period.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 4, 2009

   Syracuse, New York

## V. ORDERS

   Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

   **ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

   **FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE**

19

**DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 4, 2009

Victor E. Bianchini
United States Magistrate Judge

20